**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHELLE R. KELSO,**

        **Plaintiff,**

    **v.**                              **Civil Action 2:18-cv-435
Judge James L. Graham
Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michelle R. Kelso, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Titles II and XVI. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 7) be **OVERRULED** and that judgment be entered in favor of Defendant.

## I.   BACKGROUND

### A.  Prior Proceedings

Plaintiff filed applications for DIB and SSI on January 8, 2015, alleging disability beginning October 17, 2012. (Doc. 6, Tr. 212–21). After Plaintiff's applications were denied initially and on reconsideration (*Id.*, Tr. 141–46, 152–63), Plaintiff filed a Request for Hearing by an Administrative Law Judge (*Id.*, Tr. 164–65). Administrative Law Judge Timothy Gates (the "ALJ") held a hearing on February 9, 2017. (*Id.*, Tr. 48–84). On April 12, 2017, the ALJ issued a decision finding that Plaintiff was not disabled as defined in the Social Security Act. (*Id.*, Tr. 12–25). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.*, Tr. 1–4).

Plaintiff filed this case on May 3, 2018 (Doc. 1), and the Commissioner filed the administrative record on August 3, 2018 (Doc. 6). Plaintiff filed a Statement of Specific Errors (Doc. 7), the Commissioner responded (Doc. 9), and Plaintiff filed a Reply (Doc. 10).

### B. Relevant Testimony at the Administrative Hearing

Plaintiff testified that she completed the tenth grade in school and then received her diploma after completing vocational school. (Doc. 6, Tr. 54–55). Plaintiff stated that her job for eight years, until 2008, was performing factory labor at a bakery. (*Id.*, Tr. 56). She explained that work at the bakery was fast paced, she was on her feet most of the time, and she had to lift up to 250 pounds. (*Id.*, Tr. 56–57). Plaintiff testified that she was terminated from the bakery due to her fibromyalgia, but the bakery's stated reason was that she threatened, harassed, and intimidated coworkers. (*Id.*, Tr. 58). She also stated that she did not receive progressive discipline but was terminated for one incident. (*Id.*, Tr. 73). Based on the record, there seems to be other factors that may have contributed to Plaintiff's termination. (*See id.*, Tr. 75–76). Plaintiff further testified that, near the end of her employment at the bakery, she relied heavily on pain killers to enable her to work. (*Id.*).

Plaintiff testified that she next worked at Conn's Potato Chip Company and remained there from 2011 until 2012. (*Id.*, Tr. 59). Plaintiff explained that the job required her to be on her feet most of the day. (*Id.*). Plaintiff indicated she periodically lifted over fifty pounds at Conn's. (*Id.*, Tr. 60–61). Plaintiff testified that she left Conn's because her pain became "so severe again." (*Id.*). Plaintiff stated that, other than some temporary work in 2016, she has been unemployed since 2012. (*Id.*). Plaintiff also alluded to working for twelve years at an employer named "Essex," but the record is not clear as to when this occurred. (*See id.*, Tr. 60).

Plaintiff stated she did not need mental health treatment, but that "welfare" made her see a psychologist. (*Id.*, Tr. 61). Plaintiff opined that her mental illness stems from fibromyalgia preventing her from working or cleaning her house. (*Id.*, Tr. 62). She stated that she was prescribed Xanax for nervousness and Cymbalta for rage. (*Id.*, Tr. 62). She explained that she waited for two years to file for disability because she thought her health might improve and she then she could find a less strenuous job. (*Id.*, Tr. 63–64).

Plaintiff testified that Dr. Harvey treated her for approximately twenty-five years. (*Id.*, Tr. 64). She stated that despite numerous tests and knowing that she was in pain, she "was scared that they'd never find out what was wrong" with her. (*Id.*). She explained it took over a year to be diagnosed. (*Id.*). Plaintiff further testified that she suffers from migraines and knots in her muscles. (*Id.*).

The ALJ then asked Plaintiff to elaborate on her pain. (*Id.*, Tr. 66). She testified that she experiences pain "everywhere," and she reported pain in her bones, muscles, joints, and even her skin. (*Id.*). She stated that she cannot sleep and has not slept "three hours in years." (*Id.*, Tr. 66, 67).

The testimony then turned to Plaintiff's ability to care for herself. (*Id.*). She testified that her neighbor and nephew mow her yard. (*Id.*). She stated she can open packages and put food in the microwave, but she is generally too sick to eat. (*Id.*). She explained her house is always filthy, and there is a lot of laundry to do. (*Id.*).

Plaintiff testified that she has a driver's license and drives periodically to get medicine or when she must leave her house for other reasons, but she experiences pain when driving. (*Id.*). It is unclear, but Plaintiff seems to state that she has been in two automotive accidents due to

exhaustion stemming from a lack of sleep, and has driven erratically at times for the same reason. (*Id.*, Tr. 67).

The ALJ then questioned Plaintiff about her physical capabilities. (*Id.*, Tr. 68). Plaintiff testified she cannot sit for very long and has not attempted to lift anything recently. (*Id.*). Plaintiff then testified that she tried to lift a five-pound barbell and was able to do it with no problem, but is subject to fits of fatigue when lifting and, at times, feels like it takes effort to get off the couch. (*Id.*, Tr. 68–69).

Plaintiff's attorney then asked about her treatment. (*Id.*, Tr. 69). Plaintiff explained that she uses heat, ice, stretching, and a cane that relieves pressure related to her migraines. (*Id.*). Plaintiff further testified that she uses an infrared sauna to release her pain, but the relief lasts for only fifteen minutes before the pain returns. (*Id.*, Tr. 69–70). Plaintiff said she uses a pain patch and has tried sleeping pills to no avail. (*Id.*, Tr. 70–71). Plaintiff stated that she attends physical therapy, which makes her feel better and relieves her migraines. (*Id.*, Tr. 71–72). However, Plaintiff reported feeling even worse after some period of relief from physical therapy. (*Id.*). She reiterated that her depression stems from physical pain, but she does not need treatment for it. (*Id.*). Later during the hearing, she stated that she is not depressed. (*Id.*, Tr. 77).

The discussion then turned to Plaintiff's social life. (*Id.*). Plaintiff stated that she is not a sociable person, but she is able to go to the store and is "very civil and nice" to people that approach her. (*Id.*). She stated she watches church on television, but does not go to church. (*Id*). She explained that she does not go to parties, social functions, or family functions. (*Id.*). Instead, she prefers to be at home by herself with her animals. (*Id.*, Tr. 77–78).

Following Plaintiff's testimony, vocational expert Richard Oestreich (the "VE") testified

regarding Plaintiff's previous work history and her ability to work in her current condition. The VE opined that Plaintiff was not capable of performing her past work as a baker's helper or potato chip assembler because these jobs require exertion over Plaintiff's abilities. (*Id.*, Tr. 80). The ALJ proposed the following hypothetical limitations for a worker of Plaintiff's age and education: light work; lift ten pounds frequently, twenty pounds occasionally, and carry the same amount; occasionally push and pull up to twenty pounds; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; no exposure to extreme cold; moderate noise level; limited to routine tasks with occasional interaction with supervisors, coworkers, and the general public; no strict production requirements; and a static work environment where change is infrequent. (*Id*, Tr. 79–80). The VE concluded a person with such limitations could perform work as an inspector, sorter, or packager, as an illustration of light and unskilled jobs. (*Id.*, Tr. 80–81).

The ALJ then added the following limitations: sedentary exertion level; standing and walking only up to two hours in an eight-hour day; sitting up to six hours in an eight-hour work day; lifting up to ten pounds occasionally; occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*, Tr. 81). With these limitations, the VE stated the jobs of hand packer, labeler, and sorter would be available. (*Id*, Tr. 81–82). The ALJ proposed a third hypothetical with the same limitations as in the first, but included that there can be no interaction with coworkers, cannot work in close proximity with others, and no interactions with the general public. (*Id.*, Tr. 82). The VE opined that there were no jobs given these added limitations. (*Id.*). The VE further opined there were no jobs under the same limitations as the second hypothetical if the individual spent 25% of the day off task; this

limitation would be work preclusive. (*Id.*, Tr. 83). Finally, the VE opined that one-day-per-month is the tolerance for absenteeism for unskilled labor. (*Id.*).

### C. Relevant Medical Background

Plaintiff's arguments concern her physical and mental impairments, the Court thus examines the relevant medical evidence pertaining to the same.

Plaintiff had an appointment with Dr. Ronald Harvey, MD, on September 5, 2012. (Doc. 6, Tr. 322). She complained of pain in her left arm. (*Id.*). Dr. Harvey recommended the use of a tennis elbow splint and directed Plaintiff to rest the arm as much as possible. (*Id.*).

Plaintiff returned to Dr. Harvey on November 25, 2014, where she was diagnosed with chest pain, fibromyalgia, and depression. (Doc. 6, Tr. 317–18). Before this checkup, she had not been seen for more than two and a half years, and reported that she quit working due to chronic pain, anxiety, and poor sleep. (*Id.*, Tr. 317). The report stated Plaintiff had intermittent fevers, which had been present since her fibromyalgia diagnosis approximately fifteen years prior. (*Id.*). Plaintiff reported using Xanax at times for anxiety but did not take medication for depression. (*Id.*). Plaintiff did not have skin issues, trouble swallowing, or blood in her bowels or urine. (*Id.*).

During Plaintiff's December 7, 2015, visit to Dr. Harvey, he reported "severe fibromyalgia type symptoms intractable and changing," and that the Plaintiff also suffered "from migraines as well as moderate depression and dysmenorrhea." (*Id.*, Tr. 363). Dr. Harvey prescribed Zoloft for her depressive symptoms and naproxen for arthritic issues. (*Id.*). At the next visit in the record, on April 14, 2016, Plaintiff complained of fibromyalgia problems including chronic neck and back pain, insomnia, memory issues, and generalized fatigue. (*Id.*, Tr. 367). She reported no fevers or chills, denied cough or cold systems, and her appetite seemed to be stable. (*Id.*). Her bowel and

bladder functioning seemed to be normal, and she denied vision changes, numbness or tingling in her extremities, significant sputum production, trouble swallowing, and rashes. (*Id.*). Dr. Harvey characterized her condition as "very significant fibromyalgia with associated insomnia, chronic pain, chronic fatigue and mild depression[]" and increased her Zoloft to 50 mg daily. (*Id.*, Tr. 368). Dr. Harvey's reports regarding Plaintiff's condition were consistent in subsequent visits. (*Id.*, Tr. 372, 374, 385, 387). Further, reports generated during Plaintiff's subsequent rehabilitative treatments are consistent with Dr. Harvey's. (*Id.*, Tr. 408, 413).

On February 6, 2017, Plaintiff reported that stress as a result of the pending social security hearing exacerbated her fibromyalgia. (*Id.*, Tr. 44). She reported anxiety and depression as well as poor appetite, erratic sleep, and fatigue. (*Id.*).

A psychological evaluation of Plaintiff was performed by Steven J. Meyer, Ph.D. (*Id.*, Tr. 348). Plaintiff reported to Dr. Meyer that she had difficulty sleeping, she does not leave her house much, friends and family call and visit her, she cleans when she is able, she is able to cook and shop, and she is able to read her mail and write a list although she reported some forgetfulness. (*Id.*, Tr. 350). Dr. Meyer reported Plaintiff's appearance was clean and groomed and her behavior was extremely agitated, intense, alert, impulsive, and jumpy. (*Id.*). Her eye contact was good, facial expressions normal, and posture upright. (*Id.*). She frequently moved around. (*Id.*). There were no impairments noted in her fine motor abilities. (*Id.*). Plaintiff's speech was normal and intelligible, and her thought processes were generally well organized. (*Id.*).

Dr. Meyer reported Plaintiff's prevailing mood was moderately dysphoric, anxious, and irritable. (*Id.*). She said she was tired and in pain. (*Id.*). She reported experiencing symptoms of depression, which she experienced for ten years. (*Id.*). She reported feeling guilty and worthless

because she wanted to work but is unable to. (*Id.*). She claimed to hurt all over and could not get comfortable. (*Id.*). Dr. Meyer reported that Plaintiff did not manifest obvious signs of anxiety, and she denied auditory and visual hallucinations. (*Id.*, Tr. 351).

In summary, Dr. Meyer noted that plaintiff "alleges a history of fibromyalgia since 2003 and had been able to work since that time, but then reported ongoing pain and disrupted sleep and that she could not get comfortable." (*Id.*). She reported a depressed mood, low energy, crying spells, irritability, feelings of worthlessness, and a low appetite. (*Id.*). She also reported limited socialization. (*Id.*, Tr. 352). Dr. Meyer assigned Plaintiff a diagnosis of Adjustment Disorder with Depressed Mood based on her somatic concerns, difficulty sleeping, ongoing pain symptoms, irritability, low self-confidence, symptoms of depression, problems concentrating, and chronic fatigue. (*Id.*).

On May 9, 2016, Dr. Shelly Dunmyer, MD, performed a consultative exam of Plaintiff. (*Id.*, Tr. 391). Dr. Dunmyer's report states that Plaintiff had fibromyalgia for thirteen years, that she continues to struggle with fatigue and muscle pains, and that she is currently on medications and has done physical therapy in the past. (*Id.*, Tr. 392). The report further states that Plaintiff had migraines for thirteen years, they are treated by medication, and she has two to four per month, causing her severe headache pain, nausea, and photophobia. (*Id.*). The report also states that Plaintiff suffered fatigue and irritable bowel disease, currently treated by medications. (*Id.*). Dr. Dunmyer opined that Plaintiff is limited in her ability to stand/walk, lift/carry, push/pull, bend, reach, repetitive hand movements, and repetitive foot movements. (*Id.*).

On May 13, 2016, Denise A. Kohler, Ph.D. also performed a consultative examination of Plaintiff. (*Id.* Tr. 398–406). Dr. Kohler's findings were consistent with the aforementioned

medical records.  (*See id.*).  Dr. Kohler's Functional Assessment of Plaintiff discussed her

cognitive abilities:

> Generally, no difficulty was reported in understanding simple written or verbal instructions when given a task and instructions typically need not be repeated in order to be understood.  [Plaintiff] reported little difficulty remembering instructions[,] when given a task and, in typical daily situations, she seldom tends to be side-tracked due to forgotten instructions.
> . . .
>
> [Plaintiff] made an unremarkable presentation in adjusting to the stress involved with the present clinical interview.  However, she reported a history of deficient responses to workplace pressures.

(*Id.*, Tr. 403–04).

### D.  State Agency Assessments

State psychologists assessed the evidence.  (*Id.*, Tr. 85–138). Paul Tangerman, Ph.D.

opined that Plaintiff was capable of sustaining attention/concentration for simple repetitive tasks.

(*Id.* Tr. 93).  Juliette Savitscus, Ph.D., opined that Plaintiff retained the ability to understand and

remember one to three step tasks.  (*Id.*, Tr. 121).  Drs. Tangerman and Savitscus also opined that

Plaintiff "would do best in a work environment where contact w/others is limited to occasional

and superficial."  (*Id.*, Tr., 94, 122).  Dr. Savitscus further noted Plaintiff "[r]etains ability to

perform work setting [without] strict production requirements."  (*Id.*, Tr. 122).  Further, the state

psychologists concluded that Plaintiff "would do best in a relatively static work environment where

there are only occasional changes."  (*Id.*, Tr. 94, 123).

### E.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2016, and had not engaged in substantial gainful activity since October 17,

2012.  (*Id.*, Tr. 14).  Further, the ALJ opined that Plaintiff suffered from the following severe

impairments: fibromyalgia, migraine headaches, and an affective disorder. (*Id.*). The ALJ also found that although Plaintiff was diagnosed with hypertension and inflammatory bowel disease, these impairments did not "require more than routine, conservative treatment" and were classified as non-severe. (*Id.*, Tr. 15).

Despite Plaintiff's impairments, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ stated:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs or occasionally climb ladders, ropes, or scaffolds. She can occasionally push and pull up to 20 pounds with the upper or lower extremities. She can frequently balance, stoop, kneel, crouch and crawl. She can never be exposed to extreme cold. She can work in environments with moderate noise. She can perform simple, routine tasks with occasional interaction with coworkers, supervisors, and the public in a static work setting with no strict production requirements where change is infrequent.

(*Id.*, Tr. 17).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). "Therefore, if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## III.    DISCUSSION

Plaintiff asserts two assignments of error:   (1) The residual functional capacity determination is not supported by substantial evidence; and (2) The ALJ failed to follow the treating physician rule.  (Doc. 7).

### A.  The ALJ's RFC Determination

On review, it is not for a court to decide if there was evidence in favor of the plaintiff's position.  *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400 (6th Cir. 2018).  "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Id.* (quoting *Blakely*, 581 F.3d at 406 (further quotations omitted)).  A court must decide only if there was substantial evidence to support the ALJ's decision.  *Id.*  If so, the court must defer to that decision "even in the face of substantial evidence supporting the opposite conclusion." *Id.* (citations omitted).  Here, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence for three reasons.  The Undersigned considers each in turn.

#### 1.  Plaintiff's Migraine Headaches

Plaintiff argues that although the ALJ found Plaintiff's migraine headaches are a severe impairment, the ALJ failed to find she has a functional limitation flowing from this impairment. (Doc. 7 at 6).  Specifically, Plaintiff argues that the ALJ did not account for the additional time off-task that may be needed due to Plaintiff's migraine headaches, justifying remand of the case

so the ALJ may make a finding regarding the impact of migraines on Plaintiff's ability to work eight hours a day, five days a week. (*Id.*). The Court disagrees.

The ALJ did account for Plaintiff's migraines. Plaintiff testified at her hearing that she suffered from migraine headaches. (Doc. 6, Tr. 64–65). The ALJ found her migraines were a severe impairment and explained that "[a]lthough she did not consistently report migraine symptoms or sequelae and her treatment for headaches has been minimal, the undersigned limited [Plaintiff] to moderate noise exposure to accommodate the evidence of treatment for migraine headaches." (*Id.*, Tr. 23). Accordingly, Plaintiff's argument that the ALJ did not include any limitation related to her migraines (Doc. 7 at 6) lacks merit.

In addition, Plaintiff's argument that the ALJ did not address her need for additional breaks and absences is without merit. Plaintiff has not identified a medical source indicating a need for such restrictions. In fact, Plaintiff has not directed this Court to any medical evidence indicating her migraine headaches caused any limitation. Accordingly, the RFC's limitations accounting for Plaintiff's migraine headaches were supported by substantial evidence and within the ALJ's zone of choice.

### 2. *Plaintiff's Limitations in Concentration, Persistence, or Pace*

Plaintiff next argues that the ALJ improperly addressed Plaintiff's concentration, persistence, and pace limitations in determining the RFC. (Doc. 7 at 7). More precisely, Plaintiff claims the ALJ did not include the limitations set fourth by the state agency psychological consultants and Dr. Meyer, despite according their opinions "great weight." (Doc. 7 at 7–8).

State psychologists Drs. Tangerman and Savitscus opined Plaintiff "would do best in a work environment where contact [with] others is limited to occasional and superficial." (Doc. 6,

Tr. 94, 122).  Dr. Tangerman noted Plaintiff "[r]etains ability to perform work setting [without] strict production requirements."  (*Id.*, Tr. 94).  Lastly, both doctors concluded that Plaintiff "would do best in a relatively static work environment where there are only occasional changes."  (*Id.* Tr. 94, 122).

Dr. Meyer opined that Plaintiff would be able to perform appropriately in a work setting without strict production requirements, with additional assistance in performing new tasks, and in solitary work settings with intermittent interactions with others.  (Doc. 6, Tr. 352).  He stated Plaintiff is not expected to be able to withstand the stress and pressures of a competitive work setting without medication, treatment, and stabilization of her psychological distress.  (*Id.*, at Tr. 353).  He also stated Plaintiff's "concentration varied and she had some issues with attention and recall during [the exam]" but "[s]he put forth good effort and worked at a quick pace."  (*Id.*).

The ALJ's findings adopted Plaintiff's undisputed limitations and resolved discrepancies in the evidence.  The ALJ noted that the medical record showed Plaintiff was mildly agitated, irritable, and had a mild flight of ideas.  (Doc. 6, Tr. 16 (citing *Id.*, Tr. 350, 401)).  And, based upon the record evidence, the ALJ explained that Plaintiff was alert, cooperative and her thought processes were generally well organized with some mild tangentially.  (*Id.* (citing *id.*, Tr. 350)).  Importantly, the ALJ noted that Plaintiff reported little difficulty remembering instructions when given a task and said she was seldom side-tracked due to forgotten instructions.  (*Id.* (citing *id.*, Tr. 405)).  The ALJ concluded that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace (*Id.*, Tr. 16), and accommodated those restrictions by limiting Plaintiff to simple, routine tasks, and requiring a work environment with no strict production requirements and infrequent changes (*Id.*, Tr. 17).

Even if the record contains evidence that may support Plaintiff's argument, under the substantial evidence standard, the ALJ's findings are "not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Mixon v. Comm'r of Soc. Sec.*, 12 F. Supp. 3d 1052, 1064 (S.D. Ohio 2013) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1996)). Rather, it is the ALJ's "function to resolve conflicts in the evidence," *See Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987), and that is exactly what the ALJ did here. Accordingly, the ALJ was well within his discretion in finding that Plaintiff can "perform simple, routine tasks with occasional interaction with coworkers, supervisors, and the public in a static work setting with no strict production requirements where change is infrequent." (Doc. 6, Tr. 17).

### 3. Dr. Meyer's Opinion

The ALJ gave Dr. Meyer's opinion great weight, stating it was supported by clinical observations and treatment records that documented agitation, irritability, and depression. (Doc. 6, Tr. 22). The ALJ also stated that Dr. Meyer's opinion was consistent with the opinions of the state agency psychologists. (*Id.*). The ALJ, however, assigned little weight to Dr. Meyer's opinion regarding Plaintiff's ability to withstand the pressures of a competitive work setting. (*Id.*). Plaintiff argues the ALJ erred in this finding by failing to explain his departure from Dr. Meyer's opinion. (Doc. 7 at 9). Plaintiff claims this finding is solely based upon evidence occurring prior to Plaintiff's onset of disability, that Plaintiff's activities are not supportive of the ALJ's findings, and Dr. Meyer's own findings support his opinions. (Doc. 10 at 2–4). The ALJ's decision, however, adequately explains that Dr. Meyer's opinion regarding Plaintiff's ability to withstand the stress and pressures of a competitive work setting are not supported by the evidence.

14

The ALJ notes that Plaintiff experienced depression symptoms for thirteen years but worked until 2012 and did not have difficulty with work due to mental health symptoms. (Doc. 6, Tr. 22). Plaintiff argues this finding is in error because "[t]his theory relies on an assumption that [Plaintiff's] depression was the same level of severity as it was on or after October 17, 2012." (Doc. 10 at 2). Plaintiff claims there is no evidence to support this assumption, but Plaintiff fails to cite any evidence disputing it. (*See id.*).

The ALJ also considered Plaintiff's activities evidencing her ability to withstand workplace pressures. (Doc. 6, Tr. 22–23). Plaintiff is able to perform a wide range of activities of daily living including shopping in stores, handling her finances, paying bills, driving a car, going to restaurants, and maintaining a schedule including medical appointments. (*Id.* (*see id.*, Tr. 262, 267)). Plaintiff simply disagrees with the ALJ's interpretation and weight given to Plaintiff's activities. However, the Court must defer to the ALJ's decision if it is supported by substantial evidence "even in the face of substantial evidence supporting the opposite conclusion." *Mokbel-Aljahmi*, 732 F. App'x at 400.

The ALJ's conclusion that Plaintiff's activities conflict with Dr. Meyer's opinion is the type of analysis required when evaluating opinion evidence. *See* 20 C.F.R. § 404.1527(c)(4) ("When we consider how much weight to give to a medical opinion, we also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion."). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App's 149, 157 (6th Cir. 2009). In sum, the ALJ's departure from Dr. Meyer's opinion was supported by substantial evidence, including Plaintiff's

activities, and was adequately explained in the ALJ's decision.

## B.  Dr. Harvey's Opinions

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.*  The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2).  In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted).  The treating physician rule and the good reasons rule together create what has

been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Dr. Harvey, who has treated Plaintiff for over twenty-five years, provided an opinion indicating that it is unlikely that Plaintiff could sustain substantial gainful activity. (Doc. 6, Tr. 355–360.) Dr. Harvey noted that Plaintiff has greater than twelve tender points: allodynia; fatigue; chronic widespread pain; sleep disturbance; joint stiffness; muscle spasms; morning stiffness; irritable bowel syndrome; frequent severe headaches; cognitive dysfunction; chronic fatigue syndrome; anxiety; panic attacks; and depression. (*Id.*, Tr. 355). Dr. Harvey also opined that Plaintiff has the following work-related abilities/limitations:

- Able to walk one city block without rest or severe pain;
- Able to sit for ten minutes and stand for five minutes, at one time;
- Able to sit/stand/walk for less than two hours total in an eight-hour day;
- Requires the ability to shift positions at will from sitting, standing, or walking;
- Requires the ability to take two to three unscheduled breaks during a work day;
- Requires legs to be elevated 50% of the day;
- Occasionally lift and carry ten lbs., rarely lift and carry twenty lbs.;
- Occasionally twist, stoop, crouch;
- Rarely climb ladders and stairs;
- Occasionally look down, turn head right or left, look up, hold head in a static position;
- Can reach overhead 20% of the day; reach in all other directions 30% of the day;
- Likely to be off task more than 25% of the day and miss three days per month.

(*Id.*, Tr. 355–360). Dr. Harvey additionally noted that he believes that Plaintiff is unable of performing any type of work. (*Id.*, Tr. 360). Plaintiff argues that the ALJ erroneously assigned Dr. Harvey's opinion little weight. (Doc. 7 at 13). The Undersigned disagrees and finds that the ALJ gave good reasons for discounting Dr. Harvey's opinion.

The Undersigned first turns to Dr. Harvey's opinion that Plaintiff is unable to perform any type of work. The ALJ is not required to give weight to medical source opinions on issues reserved for the Commissioner. "A statement by a medical source that you are 'disabled' or 'unable to

17

work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(d)(1); *see also Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 448 (6th Cir. 2017) ("[A] determination concerning whether a claimant is able to work is not a medical opinion, but is instead a legal conclusion on an issue reserved for the Commissioner."). Accordingly, the ALJ did not err by according this statement little weight.

Next, the Court turns to the ALJ's treatment of Dr. Harvey's opinion regarding Plaintiff's work-related limitations. Social Security Ruling (SSR) 96-2p states that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source." SSR 96-2p, 56 FR 36932. The ruling further states that the opinion must be "well-supported" and "not inconsistent" with other substantial evidence in the individual's case record in order for it to be entitled to controlling weight. *Id.* Further, the Sixth Circuit has repeatedly emphasized that "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

In this matter, the ALJ noted that Dr. Harvey consistently recommended that Plaintiff return for treatment every six months. (Doc. 6, Tr. 22). There was no evidence Plaintiff sought emergency treatment between office visits. (*Id.*). And Dr. Harvey's treatment notes did not indicate that Plaintiff was referred to a specialist such as a neurologist, rheumatologist, orthopedic physician, or pain management physician. (*Id.*). Further, the ALJ noted Plaintiff did not require an assistive device for ambulation, and Dr. Harvey's treatment notes consistently documented normal physical examination findings, despite Plaintiff's complaints of severe pain and fatigue. (*Id.*).

"In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment." *Blair v. Berryhill*, 3:16-cv-339, 2017 U.S. Dist. LEXIS 115963, at *18 (S.D. Ohio 2017), report and recommendation adopted 2017 U.S. Dist. LEXIS 145847, (quoting *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004)). In *Strong*, the Sixth Circuit held that where there was little evidence suggesting the claimant's financial or mental condition somehow hindered him from seeking examination or treatment, the failure to seek medical examination or treatment was properly considered. *See Strong*, 88 F. App'x at 846 ("A failure to [seek examination or treatment] may cast doubts on a claimant's assertions of disabling pain." (citations omitted)).

*Strong*'s holding is relevant here because Plaintiff does not argue that her financial or mental condition hindered her from seeking treatment. Consequently, the ALJ validly considered her failure to seek treatment. The ALJ's attention to Plaintiff's lack of treatment—despite her allegation of disabling pain—serves as a good reason for according little weight to Dr. Harvey's opinions.

Moreover, even if Plaintiff's lack of treatment is not considered, the ALJ gave other good reasons for assigning Dr. Harvey's opinion little weight. Although Plaintiff complained that she was in severe pain, the ALJ noted that there was no indication that Dr. Harvey instructed her to elevate her feet for half the day or that she spent most of the day lying down. (Doc. 6, Tr. 22). Further, ALJ noted that Dr. Harvey attributed some of Plaintiff's symptoms to irritable bowel syndrome and that the record did not support a finding that the impairment caused any limitations. (*Id.*).

Additionally, the ALJ compared Dr. Harvey's opined extreme limitations with the results

of Dr. Kohler's consultative examination. (*Id.*, Tr. 22). The ALJ explained that Plaintiff was able to participate in the examination without experiencing serious physical or mental limitations. (Doc. 6, Tr. 22). The ALJ noted that it took Plaintiff approximately twenty to thirty-five minutes to complete the required paperwork in Dr. Kohler's office, but there was no indication that Plaintiff had to lie down or elevate her feet during the examination. (*Id.* (citing *id.*, Tr. 398)). The ALJ further noted that there was no evidence in the record that supported reaching or manipulative limitations. (*Id.*). The ALJ also stated that the physical therapy records indicated that Plaintiff was able to participate in a range of exercises that appeared to contradict the limitations in Dr. Harvey's assessment. (*Id.*). Finally, the ALJ observed that Plaintiff described the ability to complete a range of activities of daily living that did not appear to be as restricted as Dr. Harvey's assessment. (*Id.*). This type of evidence—including medical evidence and activities of daily living—is validly considered when assessing fibromyalgia. *Torres v. Comm'r of Soc. Sec.*, F. App'x 748, 754 (6th Cir. 2012) (explaining that "a diagnosis of fibromyalgia does not automatically entitle [a social security disability claimant] to disability benefits" and that the "ALJ relied on ability to perform activities of daily living and other actions in evaluating her functional capacity." (quoting *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (citing *Sarchet v. Charter*, 78 F.3d 305 (7th Cir. 1996)), for the proposition that "[s]ome people may have a severe case of fibromyalgia as to be totally disabled form working . . . but most do not and the question is whether [plaintiff] is one of the minority.")).

Although "the regulations instruct an ALJ to consider [the length of the treatment, the frequency of examination, and the nature of the treatment relationship] they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating

source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r SSA*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). While Plaintiff cites evidence consistent with Dr. Harvey's limitations, the Court's review is limited to the question of whether the ALJ provided good reasons for assigning Dr. Harvey's opinions little weight. As explained above, the ALJ did so here. Therefore, the Undersigned recommends overruling Plaintiff's assignment of error.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that judgment be entered in favor of Defendant.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date: March 5, 2019                          /s/ Kimberly A. Jolson
                                             KIMBERLY A. JOLSON
                                             UNITED STATES MAGISTRATE JUDGE